# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| PIZZA HUT, LLC, § | |
| § | |
| *Plaintiff*, § | |
| v. § | |
| § | Civil Action No. 4:24-cv-1002 |
| VARDAYANI MATA, INC., § | Judge Mazzant |
| MAHENDER PATEL, and PARUL § | |
| PATEL, § | |
| § | |
| *Defendants*. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Pizza Hut, LLC's Motion for Summary Judgment (Dkt. #23) and Supplement to Plaintiff Pizza Hut, LLC's Motion for Summary Judgment (Dkt. #30). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

This case arises out of a contractual dispute between Plaintiff Pizza Hut, LLC ("Pizza Hut") and Defendants Vardayani Mata, Inc. ("VMI"), Mahender Patel ("M. Patel"), and Parul Patel ("P. Patel") (collectively, "Defendants") (Dkt. #1). Pizza Hut is the franchisor of Pizza Hut® branded restaurants (Dkt. #1 at ¶ 8; Dkt. #23-2 at p. 1). On June 16, 2009, Pizza Hut entered into a Location Franchise Agreement (as subsequently amended, the "Franchise Agreement") with VMI (Dkt. #23-2). Under the Franchise Agreement, VMI had the right to open and operate a Pizza Hut® branded restaurant located at 36 U.S. Highway 46, Pine Brook, New Jersey 07058 (the "Pine Brook Restaurant") (Dkt. #23-4 at p. 2).

Further, under the Franchise Agreement, VMI is required to indemnify Pizza Hut "against all loss, damage, or liability (including attorneys' fees and costs) incurred by any of them owing to claims that arise directly or indirectly from or in connection with [VMI's] operations" (Dkt. #23-2 at § 16.4). In addition to the indemnity obligation in the Franchise Agreement, M. Patel and P. Patel executed a personal guaranty (the "Guaranty"), agreeing to personally satisfy VMI's obligations under the Franchise Agreement if VMI failed to satisfy those obligations to Pizza Hut (Dkt. #23-3).[1]

Years later, on April 12, 2023, Pizza Hut and Defendants entered into a confidential termination and release agreement (the "Termination Agreement") (Dkt. #23-4). The Termination Agreement mutually ended the franchise relationship between Pizza Hut and VMI, requiring the closure of the Pine Brook Restaurant (Dkt. #23-4). The Termination Agreement further set forth VMI's obligation to indemnify Pizza Hut for:

> all Losses arising out of or relating directly or indirectly to (i) the breach of any provision of this Agreement by any of the Franchisee Releasors; (ii) the operation of the business conducted under the Franchise Agreement before the Effective Date, (including without limitation any and all claims related to workers' compensation, employment, and premises liability); (iii) any breach, default, act or omission by any of the Franchisee Releasors with respect to the Franchise Agreement including, without limitation, those described in Section 1.2; (iv) the operation of any Affected Restaurant prior to the Effective Date by anyone not expressly approved in writing by Franchisor (including, but not limited to, Mr. Ahsen Mahmood, or any entity controlled by, owned by, or affiliated with Mr. Ahsen Mahmood, including but not limited to Pine Brook Pizza Hut LLC (collectively, the "Mahmood Parties")); and (v) the actions taken by the Franchisor Releasees to stop the operation of any Affected Restaurant by an unauthorized party (as described in

---

[1] The Guaranty states:

> We each personally guarantee, jointly and severally with each other, the complete performance of each of the terms and conditions of the Location Franchise Agreement to be performed by Franchisee, and jointly and severally agree to indemnify Pizza Hut, Inc., its "Affiliates" (as that term is defined in the Location Franchise Agreement), and the officers, directors, and employees of each of them from any liability or expense (including reasonable attorneys' fees) sustained by reason of the failure of Franchisee to perform and comply with the terms and conditions of the Location Franchise Agreement.

(Dkt. #23-3 at ¶ 2).

2

> subsection (iv), including Losses related to the Franchisor Releasees' efforts to require the Mahmood Parties to cease and desist from the operation of the Affected Restaurants and the use and/or display of the Pizza Hut Marks and other proprietary information.

(Dkt. #23-4 at § 2.6).[2]

On April 14, 2023, Ahsen Mahmood ("Mahmood"), a former employee at the Pine Brook Restaurant, along with Pine Brook Pizza Hut, LLC ("PBPH"), an entity that Mahmood owned, filed a lawsuit against Pizza Hut, VMI, M. Patel, Amitkumar Patel ("A. Patel"), and Smitaben Patel ("S. Patel") (the "New Jersey Lawsuit") (Dkt. #23-5).[3] In the New Jersey Lawsuit, Mahmood and PBPH complained of Pizza Hut, VMI, M. Patel, A. Patel, and S. Patel's unlawful conduct regarding the franchise for the Pine Brook Restaurant (Dkt. #23-5 at ¶ 1). The New Jersey Lawsuit ultimately settled (Dkt. #23-9). However, Pizza Hut alleges it was the only defendant meaningfully engaged in defending the New Jersey Lawsuit and successfully moved to dismiss some of the claims (Dkt. #23 at pp. 9–10; Dkt. #23-6; Dkt. #23-7; Dkt. #23-8). Because of these efforts to end the New Jersey Lawsuit, Pizza Hut incurred $656,617.15 to pay its attorneys' fees, costs, and the settlement amount (Dkt. #23-9; Dkt. #23-10; Dkt. #23-11; Dkt. #23-12)

On September 14, 2023, and August 29, 2024, Pizza Hut made demands for indemnification from Defendants for the New Jersey Lawsuit (Dkt. #23-14; Dkt. #23-15). Defendants have not tendered indemnity or otherwise compensated Pizza Hut for the outstanding amount (Dkt. #23-1 at ¶ 21).

---

[2] The Termination Agreement specifically defines "Losses" as: "any and all losses, costs, damages, liabilities, or expenses (including, without limitation, attorneys' fees, arbitrators' fees, expert witness fees, costs of investigation and proof of facts), and other costs of litigation or arbitration, regardless of whether litigation or arbitration is commenced" (Dkt. #23-4 at § 2.6).

[3] The New Jersey Lawsuit is styled *Pine Brook Pizza Hut LLC v. Pizza Hut, LLC, successor-in-interest to Pizza Hut, Inc., Vardayani Mata, Inc., Mahender Patel, Amitkumar Patel, and Smitaben Patel*, No. MRS-L-659-23, Superior Court of New Jersey, Law Division (Dkt. #23-5).

Based on this conduct, Pizza Hut asserts the following causes of action: (1) VMI breached the Franchise Agreement (Dkt. #1 at p. 7); (2) M. Patel and P. Patel breached the Guaranty (Dkt. #1 at p. 8); and (3) Defendants breached the Termination Agreement (Dkt. #1 at p. 8). On June 27, 2025, Plaintiff filed its Motion for Summary Judgment (Dkt. #23), seeking judgment as a matter of law on its claims against Defendants and requesting the Court enter judgment for Pizza Hut in an amount of no less than $656,617.15. Defendants did not respond. On August 18, 2025, because additional discovery was obtained, including the deposition of M. Patel in his individual capacity and as corporate representative of VMI, Plaintiff filed a Supplement to its Motion for Summary Judgment (Dkt. #30). The Motion is now ripe for adjudication.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion [for summary judgment]." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. *See Solomon v. Hous. Corrugated Box Co.*, 526 F.2d 389, 396–97 (5th Cir. 1976). Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all the evidence but "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Plaintiff moves for summary judgment on its breach of contract claims against Defendants with respect to the indemnity provisions found in Franchise Agreement, the Guaranty, and the Termination Agreement (Dkt. #23; Dkt. #30). Because Defendants failed to respond to the Motions, the Court will consider the facts set forth in Plaintiff's Motions as undisputed.[4] After careful review of the record and the arguments, the Court finds that there is no genuine dispute as to any material fact and that Plaintiff is entitled to judgment as a matter of law.

Under Texas law, a breach of contract claim requires showing: "(1) a valid contract; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached . . . by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).[5] Here, summary judgment is appropriate on Plaintiff's breach of contract claims because each element is established with uncontroverted evidence (Dkt. #23-1; Dkt. #23-2; Dkt. #23-3; Dkt. #23-4; Dkt. #23-9; Dkt. #23-10; Dkt. #23-11; Dkt. #23-12). The Court finds that no genuine issue of material fact exists as to the validity of the Franchise Agreement, Guaranty, and Termination Agreement (Dkt. #23-2; Dkt. #23-3; Dkt. #23-4). There is no dispute that these contracts imposed on Defendants a duty to indemnify Plaintiff (Dkt. #23-2 at § 16.4; Dkt. #23-3 at ¶ 2; Dkt. #23-4 at § 2.6).

---

[4] "A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion." LOCAL RULE CV-7(d).

[5] Texas substantive law governs this diversity case. *Petrohawk Properties, L.P. v. Chesapeake La., L.P.*, 689 F.3d 380, 387 (5th Cir. 2012) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 72 (1938)); *Kellog v. United States*, 54 F.3d 1194, 1201 (5th Cir. 1995).

Further, no dispute exists as to whether Plaintiff performed its obligations or whether Defendants failed to perform theirs (Dkt. #23-1 at ¶ 21). Nor is there a genuine issue as to whether Defendants' breach caused damages amounting to $656,617.15 in attorneys' fees, costs, and the settlement amount incurred throughout the New Jersey Lawsuit (Dkt. #23-9; Dkt. #23-10; Dkt. #23-11; Dkt. #23-12). Lastly, Plaintiff has established Defendants have not tendered indemnity or otherwise compensated it for the outstanding amount (Dkt. #23-1 at ¶ 21). Accordingly, the Court will **GRANT** Plaintiff's Motion for Summary Judgment (Dkt. #23).

## CONCLUSION

It is therefore **ORDERED** that Plaintiff Pizza Hut, LLC's Motion for Summary Judgment (Dkt. #23) is hereby **GRANTED**.

Plaintiff is instructed to submit to the Court a proposed Final Judgment within seven (7) calendar days of entry of this Memorandum Opinion and Order.

**IT IS SO ORDERED.**
**SIGNED** this 10th day of December, 2025.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE